United States Court of Appeals,

Fifth Circuit.

No. 92-7815.

Seshadri RAJU, Plaintiff-Appellant,

v.

Robert S. RHODES, M.D., Defendant-Appellee.

Nov. 26, 1993.

Appeal from the United States District Court for the Southern District of Mississippi.

Before SNEED[*], REYNALDO G. GARZA and JOLLY, Circuit Judges.

SNEED, Circuit Judge:

Plaintiff Seshadri Raju, M.D., appeals a district court order granting Defendant Robert Rhodes, M.D., summary judgment on the ground that Raju was collaterally estopped from relitigating his claims in district court. We affirm.[1]

I.

FACTS AND PRIOR PROCEEDINGS

Seshadri Raju, M.D., is a professor of surgery on the faculty of the University of Mississippi School of Medicine at the University of Mississippi Medical Center ("UMC") in Jackson, Mississippi. He has been employed there since 1972 pursuant to a contract with the Board of Trustees of State Institutions of Higher Learning ("Board of Trustees"). Until September 1990, Raju was director of UMC's transplant program. Robert Rhodes, M.D., was Chairman of the UMC Department of Surgery and was Raju's departmental and academic supervisor.

In 1989, Raju and Rhodes entered into a "Management Services Agreement," under which Rhodes provided management services in return for a part of Raju's income from his private practice. Raju terminated this agreement in 1991.

[*]Senior Circuit Judge of the Ninth Circuit, sitting by designation.

[1]Although the above description of this case appears quite simple, the relevant litigation history is quite complex. It is set forth in summary form in the margin to which references can be made to understand its relevance to the issues before this court. *See infra* note 3.

In October 1990, Rhodes reorganized UMC's transplant program. Raju was removed from his position as program director and was assigned Chief of Lung Transplantation and Chief of Liver Transplantation. Apparently displeased with his new positions and other changes implemented by Rhodes, Raju filed a formal grievance complaint on October 9, 1990, and sought to enjoin Rhodes's actions. Raju's grievance alleged that Rhodes's reorganization of the transplant program resulted in his demotion, adversely affected patient care, subjected him to harassment by Rhodes, interfered with his private practice, and resulted in a breach of the Management Services Agreement. A faculty grievance committee heard Raju's complaint on six separate dates, receiving evidence from people involved in the transplant program and allowing parties to present witnesses, documents, and testimony. The committee unanimously concluded that Raju's grievance lacked merit.

Having exhausted all administrative remedies at the institutional level, Raju requested a review by the Board of Trustees. On October 17, 1991, the Board affirmed the grievance committee's finding that Raju's claims against Rhodes lacked merit.

Pursuant to Miss.Code Ann. § 11-51-95, Raju appealed to the Circuit Court of the First Judicial District of Hinds County, Mississippi. The circuit court, affirming that decision, found that substantial evidence supported the Board's decision and that all proceedings complied with due process.

However, before the circuit court reached its decision, Raju brought a separate state court action on December 18, 1990, against Rhodes in the Circuit Court of the First Judicial District of Hinds County, Mississippi (No. 90-66-371). Initially, he alleged breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with business and contractual relations.[2] After Raju amended his complaint to assert constitutional violations under 42 U.S.C. § 1983, Rhodes removed the action to the United States District Court for the Southern District of Mississippi, Jackson Division, pursuant to 28 U.S.C. §§ 1441 and 1443. On November 20, 1992, the district court granted Rhodes's motion for summary judgment, holding that the grievance committee decision

---

[2]These claims were based upon the Management Services Agreement between Raju and Rhodes.

and circuit court affirmance collaterally estopped Raju from relitigating his claims, that Raju suffered no procedural nor substantive due process violation, and that Rhodes was immune from suit under Mississippi law.

## II.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1441 and 1443. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the district court's grant of summary judgment is *de novo. Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 207 (5th Cir.1991). This court must ask whether there exist no questions of material fact such that the moving party is entitled to judgment as a matter of law. *Schuster v. Martin,* 861 F.2d 1369, 1371 (5th Cir.1988). We must draw all inferences in the light most favorable to the party opposing the motion. *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). Nevertheless, some deference is due to the district court's interpretation of the law in the state in which it sits. Thus, we must accord the district court some deference on its rulings on Mississippi law. *See Schuster,* 861 F.2d at 1371.

## III.

## DISCUSSION

This controversy began when Rhodes reorganized the UMC transplant program, removing Raju from his position as program director and assigning him to two new positions. The antecedents of this case are long and complicated and require being set forth in some detail in the margin.[3] As the

---

[3]A. *The Administrative Proceedings and Review Thereof*

The proceedings began when Raju filed his grievance complaint on October 9, 1990. The grievance committee met on February 5, 1991, March 5, 1991, April 16, 1991, May 21, 1991, June 4, 1991, and June 19, 1991, and unanimously held that Raju's complaint lacked merit. The committee concluded that: (1) Raju was not demoted by Rhodes; (2) Raju was not harassed by nor discriminated against by Rhodes; and (3) Rhodes's actions were within the scope of his authority, responsibility, and prerogatives as chairman of the surgery department. Further, the committee found that the reorganization of the transplant program was for valid administrative, financial, and operational reasons, and that allegations that Rhodes was guilty of professional or ethical misconduct were meritless.

Raju requested review by the Board of Trustees, which affirmed the grievance committee decision on October 17, 1991.  The Board determined that:  (1) the UMC due process procedures were followed, and (2) the UMC grievance committee's decision was neither arbitrary nor capricious.  On November 21, 1991, Raju filed his petition for certiorari appealing the Board's decision to the Circuit Court of the First Judicial District of Hinds County, Mississippi, pursuant to Miss.Code Ann. § 11-51-95.  This action was *Raju v. Board of Trustees of the State Institutions of Higher Learning* (No. 91-69-405).  Seeking to overturn the Board's refusal to enjoin the reorganization of the transplant program, Raju claimed:  (1) The reorganization resulted in a substantial demotion to Raju; (2) evidence presented to the grievance committee did not support its decision or the Board's decision;  (3) the reorganization was Rhodes's effort to bring the practice income of other surgeons in the department under his financial control;  (4) the Board's decision will have an adverse impact on the current and future prospects of the UMC;  and (5) the Board's decision was tainted by serious violations of due process which occurred during the grievance procedure.

Judge Gibbs in *Raju v. Board of Trustees* (No. 91-69-405) denied the petition, thereby affirming the administrative decisions, on August 31, 1992.  Specifically, Judge Gibbs found that no evidence established that the reorganization adversely affected the current or future interest of UMC, that substantial evidence supported the Board's determination that the grievance committee decision was not arbitrary—particularly that Raju was not demoted, that he was not personally harassed by Rhodes, that Rhodes's actions were within the scope of his responsibility and authority as department chairman—and that the Board's decision finding no due process violations during the grievance proceedings was supported by substantial evidence.  The court explained that Raju received notice, the opportunity to be heard through testimony and other evidence, and the opportunity to present witnesses and to respond to testimony of adverse witnesses in writing and in person.

B. *Raju's Suit Based on State Law Claims (Raju v. Rhodes, No. 90-66-371)*

Before Judge Gibbs in *Raju v. Board of Trustees* (No. 91-69-405) reached his decision on August 31, 1992, Raju filed a complaint against Rhodes in the Circuit Court of the First Judicial District of Hinds County, Mississippi, on December 18, 1990 (*Raju v. Rhodes,* No. 90-66-371).  This complaint alleged breach of contract, breach of the duty of good faith and fair dealing, and tortious interference with business and contractual relations.  Raju sought damages in the amount of $5 million.  On January 29, 1991, Rhodes moved for early determination of his immunity, for protective order, and for dismissal.  This motion was based on the privilege of qualified immunity under Mississippi law.  On April 5, 1991, the court denied the motion and allowed discovery to proceed only on the issue of qualified immunity.

On April 8, 1991, Rhodes filed his answer and defenses to Raju's complaint in this state law proceeding, *Raju v. Rhodes* (No. 90-66-371), and moved for certification of interlocutory appeal.  After the circuit court denied certification, Rhodes on April 24, 1991, petitioned the Mississippi Supreme Court for certification of an interlocutory appeal of the denial of his motion to dismiss and also made a direct appeal.  On October 9, 1991, the Mississippi Supreme Court denied Rhodes's petition for interlocutory appeal and dismissed his direct appeal.

On January 16, 1992, Rhodes moved for leave to amend his answer and defenses to include collateral estoppel.  On January 31, 1992, the circuit court granted Raju's

chronology reveals, this dispute initially was determined by the authorities of the University of Mississippi. From that disposition, Raju initiated state court proceedings in the Circuit Court of the First Judicial District of Hinds County, Mississippi (*Raju v. Rhodes,* No. 90-66-371), on December 18, 1990, in which he sought restoration of his former position and damages. He alleged state law tort and contract claims. Those proceedings began as indicated by note three, and in due course were

---

motion to amend his complaint. Raju then filed his amended complaint on March 30, 1992, in which he relied on constitutional claims for damages under 42 U.S.C. § 1983. He asserted that Rhodes violated his due process rights under the Fifth and Fourteenth Amendments in that Rhodes's reorganization of the transplant program deprived him of his property—income allegedly lost because of Rhodes's interference with Raju's position and standing at UMC and imposition of the Management Services Agreement upon Raju—his liberty interests in the management of his career, practice, and income, and both procedural and substantive due process. Raju also alleged a substantive due process violation on the ground that he was entitled to funds that were diverted to Rhodes and others at UMC through the imposition of the Management Services Agreement.

C. *Raju's Federal Case After Removal By Rhodes (Raju v. Rhodes, No. J92-0206(L)(N))*

Rhodes removed the case to the United States District Court for the Southern District of Mississippi, Jackson Division, on April 10, 1992, because Raju had amended his complaint in the Circuit Court of the First Judicial District of Hinds County, Mississippi (*Raju v. Rhodes,* No. 90-66-371) to assert that his constitutional rights were violated. Rhodes also moved for determination of immunity, dismissal with prejudice, and stay of discovery. Raju filed his second amended complaint on July 14, 1992, to include additional facts affecting Raju's 42 U.S.C. § 1983 action. On September 21, 1992, Rhodes filed a supplement to his motion for determination of immunity, dismissal with prejudice, and stay of discovery. Attached to this was the circuit court opinion of Judge Gibbs (No. 91-69-405, *Raju v. Board of Trustees* ), filed on August 31, 1992, in which the circuit court affirmed the prior administrative decisions.

On November 20, 1992, the district court granted Rhodes's motion for summary judgment in *Raju v. Rhodes,* 809 F.Supp. 1229 (S.D.Miss.1992). The court held that Mississippi's combined administrative proceedings and judicial review satisfied due process and that collateral estoppel barred relitigation of issues decided by the grievance committee and affirmed by the Board of Trustees and Circuit Court of the First Judicial District of Hinds County, Mississippi (*Raju v. Board of Trustees,* No. 91-69-405, August 31, 1992). The district court also held that the preclusive effect of the circuit court judgment of August 31, 1992, foreclosed Raju's overcoming Rhodes's qualified immunity in order to sustain his 42 U.S.C. § 1983 claims, including alleged deprivation of his property or liberty interest without procedural or substantive due process. The court further noted that even if it had concluded that collateral estoppel did not apply to the state court findings in *Raju v. Board of Trustees* (No. 91-69-405, August 31, 1992), it nevertheless would conclude that Raju failed to overcome Rhodes's qualified immunity. The court found no protected property nor liberty interest of which Raju could have been deprived. Finally, the court concluded that Rhodes is immune from suit as to Raju's state law tort and contract claims. Judgment became final on November 30, 1992. On December 23, 1992, Rhodes filed his notice of appeal.

removed to the United States District Court for the Southern District of Mississippi, Jackson Division, on April 10, 1992, No. J92-0206(L)(N), following an amendment to the complaint adding alleged violations of Raju's federal civil rights. That action was disposed of adversely to Raju on November 20, 1992, and is here being reviewed. The issue before us is whether the district court erred in granting summary judgment to Rhodes on the ground that Raju was collaterally estopped from litigating his claims by the preceding separate administrative proceedings and judicial review. We find no error.

A.

The district court's November 20, 1992, summary judgment granted Rhodes judgment in Raju's action asserting constitutional violations under 42 U.S.C. § 1983 *and* state law claims of breach of contract, breach of the duty of good faith and fair dealing, and interference with contractual and business relations. Raju is appealing the adverse judgment with respect to both his state law and constitutional claims.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Under the doctrine of collateral estoppel, once a court of competent jurisdiction decides an issue of fact or law necessary to its judgment, the same parties to that judgment cannot relitigate that issue in a different action. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Collateral estoppel conserves judicial resources, protects parties from multiple lawsuits, and promotes confidence in judgments and comity between state and federal courts. *See Allen,* 449 U.S. at 94-96, 101 S.Ct. at 414-16.

Mississippi recognizes the doctrine of collateral estoppel. *See, e.g., Dunaway v. W.H. Hopper & Assocs.,* 422 So.2d 749, 751 (Miss.1982); *Magee v. Griffin,* 345 So.2d 1027, 1032 (Miss.1977). Under proper circumstances, it can preclude relitigation of issues determined in administrative proceedings. *See Mississippi Employment Sec. Comm'n v. Philadelphia Mun. Separate Sch. Dist.,* 437 So.2d 388, 396 (Miss.1983); *City of Jackson v. Holliday,* 246 Miss. 412,

149 So.2d 525, 527 (1963).

Mississippi's law of collateral estoppel requires that four elements be satisfied: (1) A party must be seeking to relitigate a specific issue; (2) that issue already had been litigated in a prior lawsuit; (3) that issue actually was determined in the prior lawsuit; and (4) that determination of the issue was essential to the judgment in the prior lawsuit. *Dunaway,* 422 So.2d at 751. Mississippi courts consistently have followed this test. *See, e.g., Estate of Stutts v. Stutts,* 529 So.2d 177, 179 (Miss.1988).

## B.

The application of this four-part test dictates that Raju properly was barred from relitigating his state law claims. The issues raised in his complaint were litigated, determined, and essential to the administrative and circuit court decisions. First, in June 1991, the grievance committee determined that Raju's complaint lacked merit. The Board of Trustees affirmed that decision on October 17, 1991. The Circuit Court of the First Judicial District of Hinds County, Mississippi, affirmed all administrative proceedings on August 31, 1992, in *Raju v. Board of Trustees* (No. 91-69-405). The United States District Court for the Southern District of Mississippi, Jackson Division, held on November 20, 1992, in *Raju v. Rhodes,* 809 F.Supp. 1229, that the administrative proceedings had been subjected to constitutionally appropriate judicial review and were entitled to preclusive effect.

## C.

We also agree with the district court that the combined administrative hearing and judicial review proceedings satisfy the minimum procedural requirements of due process. *See Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481-85, 102 S.Ct. 1883, 1897-99, 72 L.Ed.2d 262 (1982). Therefore, we will not remand this case to the district court for further proceedings. Administrative hearings were held on six separate days; the committee heard about 600 pages of transcribed testimony and reviewed voluminous documents offered by both parties. Each party had ample opportunity to present both written and oral testimony, and the committee could call its own witnesses. True, some of the safeguards employed in court, such as cross-examination and access

to compulsory process, were absent, but we have not reached the point at which every dispute within the academic community must be removed either to the court house or to an on-campus equivalent. There remain differences between disputes arising between scholars and those between ordinary people, to which lawyers are summoned, that should be recognized, and which the law should not destroy. The administrative proceedings in this instance not only satisfied the mores of the academic community but also amply satisfied the minimum procedural due process requirements which permit invocation of collateral estoppel.

Raju's efforts to show an impairment of his constitutional rights have been considered by the district court at great length, and we agree with its decision. Raju has suffered no violations of his substantive nor procedural due process rights. He has been accorded incredibly complete administrative and judicial review and at all levels has failed.

D.

The district court also correctly held that the preclusive effect of the decision of the Circuit Court of the First Judicial District of Hinds County, Mississippi, on August 31, 1992 (*Raju v. Board of Trustees,* No. 91-69-405), foreclosed Raju's overcoming Rhodes's qualified immunity in order to sustain his 42 U.S.C. § 1983 action. Qualified immunity shields government officials performing discretionary functions from civil damages liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* at 817-18, 102 S.Ct. at 2738. The court properly found that Raju did not have a constitutionally protected property nor liberty interest of which he could have been deprived by Rhodes's actions. Therefore, Raju could show neither a procedural nor substantive due process violation and consequently could not sustain his 42 U.S.C. § 1983 action.

E.

The district court further explained that even if it had concluded that collateral estoppel did not bar Raju from challenging Rhodes's immunity from suit with respect to his 42 U.S.C. § 1983

action, it nevertheless would conclude that Raju failed to provide sufficient evidence to overcome Rhodes's qualified immunity. We agree. The facts of the case dictate a finding that Raju has no constitutionally protected property nor liberty interest of which he could have been deprived. Thus, Raju failed to sustain his burden of establishing that Rhodes forfeited his immunity as to Raju's asserted constitutional claims.

Moreover, we agree with the district court that Rhodes was protected by Mississippi's qualified immunity law as to Raju's state law tort and contract claims. *See Womble v. Singing River Hosp.,* 618 So.2d 1252, 1262-65 (Miss.1993); *Hudson v. Rausa,* 462 So.2d 689, 695-96 (Miss.1984).[4] These claims were directly related to Rhodes's actions taken in his public official capacity as chairman of UMC's surgery department; they were discretionary, involved public policy, and were within the scope of his public official duties. Rhodes did nothing to forfeit his qualified immunity. *See Grantham v. Mississippi Dep't of Corrections,* 522 So.2d 219, 225 (Miss.1988) (public officials lose their qualified immunity when they exceed the scope of their authority, commit an intentional tort, or commit a tort outside the scope of their public office).

F.

Finally, in this appeal, Raju has sought to preclude the above district court actions by suggesting that the state court's denial of Rhodes's motion for determination of immunity, protective order, and dismissal in *Raju v. Rhodes* (No. 90-66-371) constitutes a holding on the merits in favor of Raju.[5] This is reading far too much into that action. Viewed in light of later developments in that proceeding, it is clear that the denial of the motion was intended merely to forestall a premature resolution of the dispute.[6] Therefore, we agree with the district court's grant of summary judgment

---

[4]In *Womble,* the Mississippi Supreme Court overruled *Hudson* to the extent that it had extended to medical personnel in public service qualified immunity for making individual medical treatment decisions. 618 So.2d at 1262-65. *Womble* maintained qualified immunity to protect public medical officials from liability stemming from their discretionary policy-making decisions. *Id.* at 1265.

[5]*See supra* note 3.B.

[6]The county circuit court (*Raju v. Rhodes,* No. 90-66-371) in denying Rhodes's motion never decided the collateral estoppel issue because Rhodes's motion did not present that defense to the court for a decision on the merits. Moreover, when the court summarily denied the motion, the

to Rhodes on the ground that Raju was collaterally estopped from relitigating his claims in federal court.

AFFIRMED.

grievance committee decision was unreviewed.  This case was removed to district court on April 10, 1992;  the administrative proceedings were affirmed by the county circuit court on August 31, 1992, in *Raju v. Board of Trustees,* No. 91-69-405.  Therefore, even assuming that the court denied the motion because collateral estoppel did not apply, this decision was limited to the proceedings that were completed at that time.